IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |  | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| v. | ) | Case No. 1:14CR230 (AJT) | |
| | ) | | |
| MUNA OSMAN JAMA, | ) | | |
| | ) | | |
| and | ) | | |
| | ) | | |
| HINDA OSMAN DHIRANE, | ) | | |
| | ) | | |
| Defendants. | ) | | |

DEFENDANT MUNA OSMAN JAMA'S
MOTION FOR JUDGMENT OF ACQUITTAL

Defendant Muna Osman Jama, by undersigned counsel, and pursuant to Rule 29 of the Federal Rules of Criminal Procedure, hereby submits this Memorandum in Support of Motion for Judgment of Acquittal. At bottom, Ms. Jama objects to the retroactive application of a legal standard that is neither contained in the statute of conviction nor drawn from any other case law. For this reason, the Court should enter a judgment of acquittal on all counts.

BACKGROUND

The government charged Jama with one count of Conspiracy to Provide Material Support to a Foreign Terrorist Organization ("FTO") in violation of 18 U.S.C. § 2339B (Count One) and twenty counts of Providing Material Support to an FTO in violation of 18 U.S.C. § 2339B (Counts Two through Twenty One). DE 7. Specifically, the Indictment alleged Jama provided "material support and resources" to al-Shabaab, an FTO, and counts two through twenty-one list twenty separate financial transactions and the amounts thereof. *Id.* at 5-6. The government

alleged that Jama provided funds to two recipients who were affiliated with al-Shabaab: Fardowsa Jama Mohamed and Barira Hussein Abdullahi. *Id.*; DE 150, p. 2.

On October 25, 2016, the Court found Jama guilty on all counts charged. DE 264. On that date, the Court authorized forty-five days to file post-trial motions.

On November 4, 2016, the Court issued its Memorandum Opinion and Findings of Fact in Support of Verdict. DE 267. The Court found that al-Shabaab is an FTO under Section 2339B and that Jama knew it was an FTO. *Id*. at 6-7. It also found that Jama was "involved in generating and delivering funds" to "other supporters of [al-Shabaab]," namely, to Fardowsa Jama Mohamed and Barira Hussein Abdullahi. *Id*. at 8-9.

The Court then turned to the question of whether Mohamed and Abdullahi were part of the al-Shabaab "organization." *Id*. at 10. It noted that "the material support statute does not specifically define or address who is part of an FTO." *Id*. at 13. Thus, the Court began its analysis by recognizing that this case presents a novel question:

> There is surprisingly little case law concerning by what standard to determine whether a particular individual is sufficiently associated with an FTO to constitute the organization itself. It appears that no decision of the Supreme Court, Fourth Circuit, or any other circuit court has addressed explicitly what showing is legally adequate to constitute delivery of funds or other material support to an FTO under Section 2339B.

*Id*. at 11.

The defense argued the test should require that the particular individual operates under the "command and control" of the organization. *Id*. at 12. The government proposed a much broader test, which would make an individual part of an FTO if that person "acted in ways that contributed to the purposes of the group" or "acted for the group and/or in concert" with it. DE 252, p. 10.

2

Faced with a lack of congressional or judicial guidance, the Court created a new and expansive standard for when a person is deemed part of an FTO under Section 2339B:

> The Court concludes that, for the purposes of Section 2339B, a person is to be deemed part of an FTO if that person is engaged in significant activity on behalf of an FTO relative to that FTO's goals and objectives, a determination to be made on the basis of all of the facts and circumstances pertaining to an individual's relationship with an FTO.

DE 267, p. 14. The Court ruled that this determination should be based on seven non-exclusive factors tailored to the facts of this case:

(1) the nature of the assistance provided or received by the individual (whether lawful or unlawful) and how it benefitted the FTO or otherwise advanced its goals and objectives;

(2) for what time period the support or resources were provided;

(3) whether the individual undertakes his or her activities specifically and exclusively for the benefit of the FTO or whether the individual undertakes similar activities for other organizations or for the public at large;

(4) the degree to which the individual's actions are directed by or coordinated with others associated with the FTO or any of its generally recognized representatives;

(5) the nature and extent of the individual's contacts within the FTO or with others acting on behalf of the FTO, including access to the FTO's leadership and to non-public information pertaining to the FTO's activities;

(6) whether the individual self-identifies with the FTO, represents himself or herself as being part of the FTO, or purports to act on behalf of the FTO; and

(7) whether the individual is reliably identified as being part of an FTO by recognized international law enforcement or other organizations.

*Id.* p. 14.

Applying this test, the Court concluded Mohamed and Abdullahi were part of the al-Shabaab "organization" because Mohamed: (1) operated safe houses for al-Shabaab, (2) "[t]here

3

is no evidence that she devoted her efforts to any other group or operated an independent organization like Doctors Without Borders or the International Red Cross," (3) solicited funds for al-Shabaab "and no one else," and (4) coordinated her activities with al-Shabaab. DE 267, pp. 15-16. The Court further found that both Mohamed and Abdullahi: (1) obtained and solicited funds for al-Shabaab use; (2) "had access to [al-Shabaab] leadership," and (3) coordinated her activities "in light of the specific needs" of al-Shabaab. *Id*.

## ARGUMENT

### I. LEGAL STANDARD ON A MOTION FOR JUDGMENT OF ACQUITTAL.

After a verdict, "[a] defendant may move for a judgment of acquittal, or renew such a motion" if "the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29. To rule on a motion under Rule 29, the Court will determine whether the evidence is sufficient to establish the elements of the charged offense. *United States v. Bonner*, 648 F.3d 209, 213 (4th Cir. 2011).

### II. JAMA'S CONVICTION VIOLATES THE DUE PROCESS CLAUSE.

#### A. The Due Process Clause Requires Fair Notice of Illegality.

The Due Process Clause of the United States Constitution requires "that a criminal statute give fair warning of the conduct it prohibits." *Bouie v. City of Columbia*, 378 U.S. 350 (1964). This is a "basic principal," *id*., at the heart of "perhaps the most majestic concept in our whole constitutional system." *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 174 (1951) (Frankfurter, J., concurring). Fair warning must be given "in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible, the line should be clear." *United States v. Lanier*, 520 U.S. 259, 265 (1997) (*quoting McBoyle v. United States*, 283 U.S. 25, 27 (1931)). "'The principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.'" *Id*. (*quoting Bouie*, 378 U.S. at p. 351).

4

"There are three related manifestations of the fair warning requirement." *Lanier*, 520 U.S. at 266. *First*, a court may not enforce a statute that is "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Id*. *Second*, when interpreting a statute, "the canon of strict construction of criminal statutes, or the rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered." *Id*. *Third*, a court may not apply "*a novel construction of a criminal statute* to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope. *Id*. (emphasis added). Under each of these manifestations, "the touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Lanier*, 520 U.S. at 266.

Courts "have taken special care to insist on fair warning when a statute regulates expression and implicates First Amendment values." *Marks v. United States*, 430 U.S. 188, 192 (1977) (citing *Buckley v. Valeo*, 424 U.S. 1 (1976)). Thus, "stricter standard of permissible statutory vagueness may be applied to a statute having a potentially inhibiting effect on speech." *Cramp v. Board of Public Instruction of Orange County, Fla*., 368 U.S. 278, 287 (1961). This is because "[t]he vice of unconstitutional vagueness is further aggravated where . . . the statute in question operates to inhibit the exercise of individual freedoms affirmatively protected by the Constitution." *Cramp v. Board of Public Instruction of Orange County, Fla*., 368 U.S. 278, 287 (1961). If a statute "as authoritatively construed, is so vague and indefinite as to permit the punishment of the fair use of [free speech] it is repugnant to the guaranty of liberty contained in the Fourteenth Amendment." *Id.* at 288.

Here, Jama's conviction violates Due Process because (1) Section 2339B does not "make reasonably clear" to which individuals she was prohibited from sending money, (2) the Court did

5

not interpret Section 2339B in accord with the rule of lenity, and (3) the Court's construction of how to determine whether a person is part of an FTO cannot be retroactively applied to Jama. Accordingly, Jama's motion should be granted.[1]

### B. As Construed by the Court, Section 2339B Is Unconstitutionally Vague.

"'A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18 (2010) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). "The degree of precision required increases with the gravity of the penalty and the importance of the rights at stake." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99 (1982) (higher standard applicable for criminal statutes and when speech is at stake). The material support provision at issue here is subject to the most stringent vagueness scrutiny because it both imposes severe criminal sanctions and threatens speech. *Id.*; *Reno v. American Civil Liberties Union*, 521 U.S. 844, 871-72 (1997); *Baggett v. Bullitt*, 377 U.S. 360, 372-73 (1964).

Here, as construed by the Court, Section 2339B does not give fair warning of the individuals to whom it is unlawful to send material support. Section 2339B(a)(1) provides, in relevant part, that "whoever knowingly provides material support or resources *to a foreign terrorist organization*, or attempts or conspires to do so, shall be fined under this title or

---

[1] It does not matter if a defendant subjectively believed her conduct violated the statute. The determination of "fair warning" is made on the basis of the statute and the court's interpretation of it, and not "on the basis of an ad hoc appraisal of the subjective expectations of particular defendants." *Bouie v. City of Columbia*, 378 U.S. 347, 355 n.5 (1964) (holding fact that defendants intended to violate statute it was "irrelevant" to whether court's interpretation of statute violated Due Process by failing to give fair warning as to what conduct would be a violation). Thus, it is irrelevant whether Jama believed her conduct violated Section 2339B or whether she knew the penalties for such a violation.

6

imprisoned not more than 15 years, or both, and, if the death of any person results, shall be imprisoned for any term of years or life." 18 U.S.C. § 2339B(a)(1) (emphasis added).[2] The Court noted in reaching its verdict that Section 2339B does not specifically address or define how to determine if a person is part of an FTO, and no case law previously had addressed the question. DE 267 at 13. Accordingly, as acknowledged by the Court, at the time the events in this case took place the statute, by its terms, did not identify which individuals are considered part of an FTO.[3]

Thus, apart from persons squarely within an FTO, the statute provides no fair warning that individuals who may not be under the command and control of an FTO – like Mohamed and Abdullahi – would be considered part of an FTO if they operated a safe house and solicited funds for the FTO, did not devote their efforts to other groups, coordinated their activities with the FTO, and had access to the FTO leadership. There is no text in the statute to indicate that it prohibits providing support to persons outside of the direction and control of an FTO, but are otherwise considered to be affiliated with an FTO. Accordingly, the court's construction of the statute violates Ms. Jama's right to have fair warning of the crimes of which she was convicted. *See, e.g.*, *Bouie*, 378 U.S. at p. 355 (South Carolina trespass statute did not provide fair warning of different act of remaining on the premises after being asked to leave.).

---

[2] An amended version of 18 U.S.C. § 2339B took effect on June 2, 2015 increasing the maximum prison term for providing material support when death does not result to twenty years.
[3] "When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning." *See Smith v. United States*, 508 U.S. 223, 228 (1993). And "[d]ictionary definitions of 'organization' suggest the term refers to a formally structured entity." *Health Care Indemn., Inc. v. King*, No. CIVA 2:05-0913, 2007 WL 537738, at *6 (S.D.W. Va. Feb. 14, 2007) (citing Webster's Third New International Dictionary and American Heritage Dictionary); *cf. Hymas v. United States*, 810 F.3d 1312, 1321 (Fed. Cir. 2016) (holding "that the phrase 'public or private agencies and organizations' contains ambiguity" where terms were not otherwise defined in statute).

The absence of any statutory language defining who is part of an FTO supports Jama's vagueness challenge. In *Humanitarian Law Project*, the Supreme Court rejected a vagueness challenge to a different aspect of Section 2339B because Congress had specifically added narrowing definitions of "training," "expert advice or assistance" and "personnel" to the statute. The Supreme Court noted that "Congress also took care to add narrowing definitions to the material-support statute over time. These definitions increased the clarity of the statute's terms." *Holder*, 561 U.S. at 21. In rejecting the vagueness challenge at issue there, the Supreme Court aptly noted that "the scope of the material-support statute may not be clear in every application," but it was in that case because, in light of the narrowing definitions, "the statutory terms [were] clear in their application to plaintiffs' proposed conduct." *Id*.

This case is different. The material support statute does not define "organization" and does not define or explain what it means to be a member of the organization, or what nexus is sufficient between a non-member and the organization to bring assistance provided to the recipient under the scope of its prohibitions. And as the Court acknowledged, its newly-created non-exclusive seven factor test is drawn neither from the statute nor from any binding or persuasive case law construing the text of the statute.

It simply is not the Court's place to fill this hole in the statute. As the Supreme Court has explained, "[i]t is one thing to fill a minor gap in a statute—to extrapolate from its general design details that were inadvertently omitted. It is quite another thing to create from whole cloth a complex and completely novel procedure and to thrust it upon unwilling defendants for the sole purpose of rescuing a statute from a charge of unconstitutionality." *United States v. Jackson*, 390 U.S. 570, 580 (1968). In other words, this Court's wholesale creation of a definition of who may not receive material support represents "a task outside the bounds of judicial interpretation.

It is better for Congress, and more in accord with its function, to revise the statute than for us to guess at the revision it would make. That task it can do with precision. [This court] could do no more than make speculation law." *United States v. Evans*, 333 U.S. 483, 495 (1948).

In sum, before this Court's ruling, there was no definition of who could be prohibited from receiving material support and no standard by which to measure the degree of affiliation required to fall within that definition. Because district courts are not in the branch of government equipped to address these omissions, and because courts cannot in any event apply such a newly-created definition and standard retroactively, this Court should enter a judgment of acquittal.

        **C.**     **The Court Did Not Apply The Rule of Lenity in Construing Section 2339B.**

When faced with a statutory ambiguity in a criminal case, the rule of lenity requires the Court to construe a statute narrowly, not broadly. "The canon of strict construction of criminal statutes, or the rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered." *United States v. Lanier*, 520 U.S. 259, 266 (1997). When applying the rule of lenity, criminal statutes "are to be strictly construed and should not be interpreted to extend criminal liability beyond that which Congress has 'plainly and unmistakenly' proscribed." *United States v. Hilton*, 701 F.3d 959, 966 (4th Cir. 2012) (quotations omitted). The rule of lenity requires that when a choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite." *Id.* at 968. Courts follow the rule of lenity because it "acknowledges that Congress, rather than the judiciary, is the proper institution to define criminal conduct." *Id.* When faced with the choice of two plausibly valid interpretations, "we yield to the rule of lenity." *Id.* at 969.

9

Here, Congress did not define what it means to for an individual to be part of an FTO. The Court was faced with the choice of two plausibly valid interpretations: (1) Defendant's "command and control" test; and (2) the government's less formal RICO-type "enterprise" test. The rule of lenity required the Court to adopt the more narrow "command and control" test proposed by Defendants because it was "plausibly valid," as Section 2399B uses this exact test to determine when someone violates the statute by providing prohibited "personnel." Dkt. No. 267 at p. 13.

The Court chose neither of the definitions proposed by the parties, however, and instead fashioned its own test. The Court's rejection of Defendant's "command and control" test disregarded the rule of lenity. Accordingly, the Court's new standard impermissibly expanded the scope of the material support statute as applied to Jama without regard to the rule of lenity.

### D.  The Court's Construction of Section 2339B Cannot Be Applied Retroactively to Jama.

The Due Process Clause of the Fourteenth Amendment "bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *Lanier*, 520 U.S. at 266; *Bouie*, 378 U.S. at 352 ("[A] deprivation of the right to fair warning can result not only from vague statutory language but also from *an unforeseeable and retroactive judicial expansion* of narrow and precise statutory language." (emphasis added)). This is because "an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law." *Bouie*, 378 U.S. at 353. "If a state legislature is barred by the *Ex Post Facto* Clause from passing such a law, it must follow that a [court] is barred by the Due Process Clause from achieving precisely the same result by judicial construction." *Marks v. United States*, 430 U.S. 188, 192 (1977) (quoting *Bouie*, 378 U.S. at 353-54).

10

"While typically courts strike down convictions where the statute itself is vague, they will also overturn convictions if the statute is "narrow and precise," but it has been "unforeseeably and retroactively expanded by judicial construction." *Bouie*, 378 U.S. at 351-52.  Thus, courts will overturn a conviction if it "rested on an unforeseeable judicial construction of the statute." *Marks v. United States*, 430 U.S. 188, 192 (1977).  This includes where a conviction results from a judicial interpretation of a statute that is "a significant departure" from previous law and that "expanded criminal liability." *E.g.*, *Marks*, 430 U.S. at 192  (overturning conviction for transporting obscene materials, as it depended on the Court's interpretation of what constitutes "obscene," which was not in effect when the acts were committed).  An interpretation is unforeseeably expanded where it is not based on prior decisions.  *E.g.*, *Bouie*, 378 U.S. at 356 (holding the lower court's interpretation "has not the slightest support in prior [state court] decisions"); *cf. Rose v. Locke*, 423 U.S. 48, 52 (1975) (holding there was fair notice where "[o]ther jurisdictions had already reasonably construed identical statutory language"). While judicial construction of a statute can be "valid for the future," it cannot be "applied retroactively to the prior conduct of the defendants who are before the court "any more than a legislative enactment may be, to impose criminal penalties for conduct committed at a time when it was not fairly stated to be criminal." *Bouie*, 378 U.S. at 362.

For example, in *Rabe v. Washington*, 405 U.S. 313 (1972), a defendant was convicted of violating an obscenity statute by showing a risqué movie at a drive-in theater.  In interpreting whether the film was "obscene" under the statute, the lower court ruled that whether the film was obscene depended on "the context of its exhibition." *Id*. at 314-15.  On appeal, the Supreme Court reversed.  It held that the lower court's interpretation of the statute created a "context" requirement, but "[t]he statute under which petitioner was prosecuted, however, made no

11

mention that the 'context' or location of the exhibition was an element of the offense somehow modifying the word 'obscene.'" *Id*. at 315. Thus, "so construed, [the statute] is impermissibly vague as applied to petitioner because its failure to give him fair notice that criminal liability is dependent upon the place where the film is shown." *Id*.

Similarly, in *Bouie v. City of Columbia*, 378 U.S. 347 (1964), the defendants entered a restaurant and, while they were seated, the proprietor put up a "no trespassing" sign and asked them to leave. They refused, and were convicted of criminal trespass under a statute that prohibited "entry upon the lands of another . . . after notice from the owner or tenant prohibiting such entry." *Id*. at 349-50. While the statute prohibited entering property *after* receiving notice to leave, it did not explicitly address entering property *before* receiving such notice, but staying on the property after receiving notice to leave. *Id*. The lower court interpreted the statute broadly "to cover not only the act of entry on the promises of another after receiving notice not to enter, but also the act of remaining on the premises of another after receiving notice to leave." *Id*. at 350. The Supreme Court reversed because defendants did not have fair warning that a court would interpret the statute to also prohibit the different act of remaining on the premises after being asked to leave. *Id.* at 352-53.

As these examples illustrate, enforcing a broad interpretation of a narrow statute causes an even greater Due Process violation than enforcing a vague statute. This is because when a statute is vague on its face, "it at least gives a potential defendant some notice, by virtue of this very characteristic, that a question may arise as to its coverage, and that it may be held to cover his contemplated conduct." *Bouie*, 378 U.S. at 351. When a statute is narrow and precise, however, "it lulls the potential defendant into a false sense of security" because he cannot know that conduct that appears to be outside the scope of the statute "will be retroactively brought

12

within it by an act of judicial construction." *Id*. Thus, a Due Process violation "is that much greater when, because the uncertainty as to the statute's meaning *is itself not revealed until the court's decision*, a person is not even afforded an opportunity to engage in such speculation before committing the act in question." *Id.* at 352 (emphasis added).

Here, even if Section 2339B gave fair notice as drafted, the Court created an unforeseeable and expansive interpretation of when a person is deemed part of an FTO for purposes of Section 2339B. *See* DE 267 at 14. Indeed, according to the Court's ruling, even the defendants themselves constitute members of an FTO, and material support (such as legal advice) provided to the defendants presumably violates the statute. This ruling is unforeseeable. The Court even acknowledged that Section 2339B "does not specifically define or address who is part of an FTO," and "[t]here is surprisingly little case law concerning by what standard to determine whether a particular individual is sufficiently associated with an FTO to constitute the organization itself." *Id.* at 11-13.

Thus, when Ms. Jama's conduct occurred, no prior case or statute had defined an individual as part of an FTO in the way interpreted by the Court. No other court determined that an individual is part of an FTO if they are "engaged in significant activity on behalf of the FTO." *Id.* at 14. No court had considered the "nature of the assistance." *Id*. No court had considered "what time period the support or resources were provided." *Id*. No court had identified "whether the individual undertakes his or her activities specifically and exclusively for the benefit of the FTO" as a relevant factor. *Id*. No court examined the "degree to which the individual's actions are directed by or coordinated with others associated with the FTO." *Id*. No other court analyzed "the nature and extent of the individual's contacts within the FTO." *Id*.

13

And, no court considered "whether the individual is reliably identified as being part of an FTO by recognized international law enforcement or other organizations." *Id.*

Indeed, no other court has defined the "organization" in 2339B to include an individual supporter, sympathizer or someone who merely contributed to the purposes of the foreign terrorist group. Every prior decision has involved sending money to either an established member or leader of the FTO. See Dkt. No. 246 at 3 (citing *Humanitarian Law Project*, 561 U.S. 1 (providing support to "members of foreign terrorist organization); *United States v. Ali*, 799 F.3d 1008 (8th Cir. 2015) (sending money to "senior al Shabaab figure"); *United States v. Al Kassar*, 660 F.3d 108, 115 (2d Cir. 2011) (providing material support to "members of FARC"); *United States v. El-Mezain*, 664 F.3d 467, 531 (5th Cir. 2011) (providing support to "Hamas leaders and members"); *United States v. Al-Arian*, 308 F. Supp. 2d 1322, 1338 (M.D. Fla. 2004) (providing services to "member" of terrorist organization); *United States v. Warsame*, 537 F. Supp. 2d 1005, 1011 (D. Minn. 2008) (defendant "sent money overseas to an Al Qaeda member"); *United States v. Assi*, 414 F. Supp. 2d 707, 709 (E.D. Mich. 2006) (Defendant was planning to transport technical equipment to members of Hizballah"); *United States v. Sattar*, 272 F. Supp. 2d 348, 355 (S.D.N.Y. 2003) (providing support to "group leaders and members" of the Islamic Group)).

It was not until the Court applied its construction of the statute to fashion a new standard to fit the facts of this case that Jama, or any other defendant, learned that her conduct fell within the scope of the statute. It could not have been "reasonably clear" to Jama that Section 2339B would encompass sending money to Mohamed or Abdullahi. *Lanier*, 520 U.S. at 266. Indeed, throughout the case, it was not clear to the defense or the Court who was the prohibited recipient of the funds at issue. *See* Dkt 144, Feb. 12, 2016, Order granting Mot. Bill of Particulars

(directing government to state whether identified recipients of funds were al-Shabaab, or whether charged offenses occurred when funds were delivered to others). And the Court agreed there was little prior guidance and its decision would be a novel interpretation. As applied retroactively to Jama, this is precisely the type of unforeseeable judicial construction of the statute our law forbids. *Bouie*, 378 U.S. at 352.

### III.  JUDICIAL CONSTRUCTION OF A STATUTE MUST USE A STRICTER STANDARD OF FAIR WARNING IF THE STATUTE CAN INHIBIT FIRST AMENDMENT RIGHTS.

As noted at the outset, Courts "have taken special care to insist on fair warning when a statute regulates expression and implicates First Amendment values." *Marks,* 430 U.S. at 196 (citing *Buckley*, 424 U.S. 1). Thus, a "stricter standard of permissible statutory vagueness may be applied to a statute having a potentially inhibiting effect on speech." *Cramp*, 368 U.S. at 287; *see also Humanitarian Law Project v. Reno*, 205 F.3d 1130, 1134 (9th Cir. 2000) ("When a criminal law implicates First Amendment concerns, the law must be 'sufficiently clear so as to allow persons of ordinary intelligence a reasonable opportunity to know what is prohibited.'" (quoting *Foti v. City of Menlo Park*, 146 F.3d 629, 638 (9th Cir. 1998)). Indeed, the statute itself expressly provides a rule of construction to avoid any interpretation that could run afoul of the First Amendment: "Rule of construction.-- Nothing in this section shall be construed or applied so as to abridge the exercise of rights guaranteed under the First Amendment to the Constitution of the United States." 18 U.S.C.A. § 2339B(i).

The First Amendment right implicated by Jama's conduct is the donation of funds to a political cause. "[T]he First Amendment protects the expressive component of seeking and donating funds." *Reno*, 205 F.3d at 1134 (affirming district court's order enjoining the prosecution of activities covered by the terms "training" and "personnel" in Section 2339B as void for vagueness under heightened First Amendment vagueness standard); *see also Citizens*

15

*United v. Fed. Election Comm'n*, 558 U.S. 310, 349 (2010) ("If the First Amendment has any force, it prohibits Congress from fining or jailing citizens, or associations of citizens, for simply engaging in political speech."). Accordingly, each of the three related manifestations of the fair warning requirement of Due Process, discussed above, apply with even greater force here.

Facing a similar issue and analysis, the Ninth Circuit in *Reno*, 205 F.3d 1130, affirmed the district court's ruling that portions of Section 2339B were unconstitutionally vague: "It is easy to see how someone could be unsure about what [Section 2339B] prohibits with the use of the term 'personnel,' as it blurs the line between protected expression and unprotected conduct." *Id*. at p. 1137. The court declined to "read into [the statute] a requirement" that it did not contain. The court aptly explained that "[w]hile we construe a statute in such a way as to avoid constitutional questions, . . . we are not authorized to rewrite the law so it will pass constitutional muster." *Id*. at pp. 1137–38 (citing *Swain v. Pressley*, 430 U.S. 372, 378–79 n.11 (1977) and *United States v. United States Dist. Court for the Cent. Dist. of Cal.*, 858 F.2d 534, 542 (9th Cir.1988) ("[A]lthough we may strain to construe legislation so as to save it against constitutional attack, we must not and will not carry this to the point of perverting the purpose of a statute or judicially rewriting it.")).

Here, the Court should have applied a heightened vagueness standard and reached the same conclusion. Jama was convicted for being "involved in generating and delivering funds" to "*other supporters of [al-Shabaab]*," namely, to Fardowsa Jama Mohamed and Barira Hussein Abdullahi. DE 267, pp. 8-9 (emphasis added). The material support statute does not define "organization" and does not define or explain what it means to be a member of the organization, or what nexus is sufficient between a non-member supporter and the organization to bring assistance provided to the non-member under the scope of its prohibitions. In other words, it

16

fails to draw clear lines mandated by the Constitution where speech may trigger criminal sanctions. Thus, it is equally easy to see here how someone could be unsure of whether a charitable or political donation to an individual supporter or sympathizer of AS would be considered a donation to the "organization."

Instead of applying the heightened vagueness analysis required by the First Amendment, the Court created a new and expansive standard for when a person is deemed part of an FTO under Section 2339B:

> The Court concludes that, for the purposes of Section 2339B, a person is to be deemed part of an FTO if that person is engaged in significant activity on behalf of an FTO relative to that FTO's goals and objectives, a determination to be made on the basis of all of the facts and circumstances pertaining to an individual's relationship with an FTO.

DE 267, p. 14. In announcing this standard, the Court created a standard that goes far beyond the construction of the text in the statute. And in doing so, the Court interpreted the statute in a way that abridges the exercise of rights guaranteed under the First Amendment to the Constitution of the United States – namely the donation of funds for a political cause. And even the Court's new and expansive standard does not provide clarity, as it requires an extensive fact-intensive analysis of seven non-exclusive factors that may or may not bring the donation under the scope of the statute. Simply put, it requires individuals to draw impossible distinctions between people and activities to guess at whether the statute applies. As the court held in *Reno*, 205 F.3d 1130, this Court cannot rewrite or read into the statute missing terms, but rather must leave such extensive revision to the Congress to amend the statute to provide the requisite specificity to comply with Due Process.

Indeed, Congress has amended Section 2339B a number of times to add narrowing definitions as a result of various vagueness challenges. *See, e.g.*, James Layman, Out of the

Darkness: Punishing Thought in Federal Terrorism and Hate Crime Statutes, 14 Rutgers Race & L. Rev. 181 (2013).  In *Holder*, 561 U.S. at 21, the Supreme Court relied on the narrowing definitions to reject a vagueness challenge: "These narrowing definitions increased the clarity of the statute's terms."  *Id*.  Congress should amend the statute again to add a narrowing definition of "organization" to clarify the ambiguity created by the lack of any definition or guidance on what constitutes an "organization."  Although discussing Section 2339B's "knowledge" requirement, Mr. Layman aptly noted that the remaining "deficiencies [in Section 2339B] have created a dangerous guessing game, with criminal and civil liability lurking behind the ambiguity.  If donors and charities are to make contributions free from the lingering fear of guessing incorrectly," additional definitions should be added.  Layman, *Out of the Darkness: Punishing Thought in Federal Terrorism and Hate Crime Statutes*, 14 Rutgers Race & L. Rev. 181 (2013).

As explained above, even under a normal Due Process analysis, Section 2339B fails to give fair warning of the individuals to whom it is unlawful to send money or other material support.  This conclusion has even greater force under the heightened standard required by the First Amendment.  Accordingly, the Court should grant this motion.

## CONCLUSION

For the foregoing reasons, the Court should enter a judgment of acquittal as to all counts.

Respectfully submitted,

Muna Osman Jama
Defendant

By: ___/s/_____
Geremy C. Kamens, Esq.
Va. Bar # 41596
Whitney E.C. Minter, Esq.
Va. Bar # 47193

                                                        Joshua M. Siegel, Esq.
                                                        Va. Bar #73416
                                                        Attorneys for Muna Jama
                                                        1650 King St., Suite 500
                                                        Alexandria, Virginia 22314
                                                        Telephone:  (703) 6000-0848
                                                        Facsimile: (703) 600-0880
                                                        Geremy_Kamens@fr.org
                                                        Whitney_Minter@fd.org
                                                        jsiegel@cooley.com


## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of December 2016, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

    James Gillis, Esq.
    Assistant U.S. Attorney
    Danya E. Atiyeh, Esq.
    Trial Attorney, National Security Division
    Office of the U.S. Attorney
    Eastern District of Virginia


                                                            /s/
                                          Geremy C. Kamens, Esq.
                                          Va. Bar # 41596
                                          Whitney E.C. Minter, Esq.
                                          Va. Bar # 47193
                                          Joshua M. Siegel, Esq.
                                          Va. Bar #73416
                                          Attorneys for Muna Osman Jama
                                          1650 King St., Suite 500
                                          Alexandria, Virginia 22314
                                          Telephone:  (703) 6000-0848
                                          Facsimile: (703) 600-0880
                                          Geremy_Kamens@fr.org
                                          Whitney_Minter@fd.org
                                          jsiegel@cooley.com